IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| NANCY MILNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 07-945-MO |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

MOSMAN, J.,

　　　Plaintiff Nancy Milner challenges the Commissioner's decision denying her applications for

disability insurance benefits and supplemental security income payments under Titles II and XVI of

the Social Security Act.  I have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  I REVERSE

and REMAND the Commissioner's decision for further proceedings.

　　　The court reviews the Commissioner's decision to ensure that proper legal standards were

applied and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g);

*Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Ms. Milner argues the ALJ failed to identify all of her severe impairments and improperly assessed her residual functional capacity ("RFC"). As a result, Ms. Milner argues, the ALJ's RFC assessment did not accurately reflect all of her functional limitations and led the ALJ to erroneously conclude she remains capable of performing her past work.

## I.    <u>Severe Impairments</u>

Ms. Milner contends the ALJ erred at step two by finding her mental deficits and hepatitis C non-severe impairments. At step two, the ALJ must determine whether the claimant has any combination of impairments which meets the regulatory definition of severe by significantly limiting her ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is not severely impaired, the ALJ must find the claimant not disabled. In such cases, the decision-making process terminates at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

In the present case, the ALJ concluded that Ms. Milner satisfied the threshold or *de minimis* requirement of having a severe impairment. Admin. R. 20. The ALJ continued the sequential decision-making process until reaching a determination at step four. Any error in designating specific impairments severe did not prejudice Ms. Milner at step two, because step two was resolved in her favor. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)(Any error in omitting obesity from list of severe impairments at step two harmless where step two was resolved in claimant's favor).

Ms. Milner's argument is much stronger if construed as a challenge to the ALJ's RFC assessment. Once a claimant has surmounted step two by showing severe impairment, the ALJ must consider the functional limitations imposed by all medically determinable impairments, including those the ALJ did not find severe at step two. 20 C.F.R. §§ 404.1523, 416.923. Accordingly, the present ALJ was required to evaluate any functional limitations imposed by Ms. Milner's mental impairments and hepatitis C as part of the RFC assessment.

## II.    RFC Assessment

The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular, and continuing basis, despite the functional limitations imposed by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider all allegations of limitations and restrictions. SSR 96-8p, 1996 WL 374184 * 5.

### A.    State Agency Reviewing Physicians' Opinions

The basis of Ms. Milner's step-two argument was that the ALJ failed to properly evaluate the opinions of state agency reviewing consultants regarding her mental impairments and hepatitis C. The state agency reviewing physicians, Martin Kehrli, M.D., and Sharon Eder, M.D., reviewed Ms. Milner's medical records and opined that elevated liver function tests on September 18, 2002, "would suggest fatigue could reasonably be a symptom of the [hepatitis C]." Admin. R. 290. In their assessment of Ms. Milner's RFC, Drs. Kehrli and Eder found her limited to light work "to give the claimant the full benefit of the doubt that hepatitis C is causing her some fatigue." *Id.* at 289.

The ALJ rejected that opinion and found Ms. Milner retained the capacity to perform medium work. *Id.* at 23, 26 . The Commissioner concedes the ALJ's reason for rejecting the opinion of Drs.

Kehrli and Eder was not supported by substantial evidence.  Def.'s Br. 6.  The Commissioner urges

the court to find the error harmless because it did not affect the result of the ALJ's ultimate decision.

   The court will not reverse an ALJ's decision for harmless error, which exists when it is clear

from the record that the ALJ's error was "inconsequential to the ultimate nondisability

determination."  *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v.

Commr. of the Soc. Sec. Admin.,* 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *Tommasetti v. Astrue,* ___

F.3d ___ (9th Cir. July 17, 2008).

   The harmless error doctrine cannot be applied here.  It is not clear the ALJ's error was

inconsequential to the decision.  The ALJ concluded Ms. Milner could perform her past work.  The

vocational expert ("VE") testified Ms. Milner's past work required medium exertion.  Admin. R.

426-27.  The  opinion of Drs. Kehrli and Eder would therefore exclude Ms. Milner's past work.

   The Commissioner relies on the treatment records of Bruce Ames, M.D.  Dr. Ames's

progress notes indicate Ms. Milner reported worsening fatigue for only 8 months.  *Id.* at 303, 305,

307, 309, 311, 316, 317, 344, 346, 348, 350, 352.  The chart notes also suggest Ms. Milner's

hepatitis C was asymptomatic much of the time and she did not vigorously pursue Interferon

treatment.  The Commissioner contends these records support the ALJ's conclusion because they

do not establish Ms. Milner's fatigue persisted for a continuous period of 12 months or significantly

limited her ability to perform work activities.  In essence, the Commissioner argues the ALJ could

have reached the conclusion that hepatitis C does not impose functional limitations based on Dr.

Ames's records.

   What the Commissioner's argument ignores, is that the ALJ could not have reached that

conclusion without rejecting the opinion of Drs. Kehrli and Eder that hepatitis C limits Ms. Milner

to light work.  The court cannot consider whether Dr. Ames's records provide an adequate basis to discredit the opinion of Drs. Kehrli and Eder, however, because the court is constrained to review the reasons asserted by the ALJ.  *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003); *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947).

Ms. Milner asserts a similar challenge regarding the opinion of the state reviewing psychologist, Paul Rethinger, Ph.D.  Dr. Rethinger reviewed the medical and psychological evidence and completed the standard agency forms used to assess the severity of a claimant's mental impairment.  Admin. R. 262-76, 277-80.  Dr. Rethinger found Ms. Milner retained the "ability to understand and remember simple/detailed instructions" and "would be able to carry-out simple, 1-3 step tasks," but substance abuse precluded her from carrying out detailed instructions on a sustained basis.  *Id.* at 280.  He found "social anxiety precludes working directly w/ the public, but she is able to interact on a casual basis."  *Id.*

The ALJ's RFC assessment limited Ms. Milner's contact with the general public, but did not exclude work requiring her to carry-out detailed instructions on a sustained basis in conformity with Dr. Rethinger's opinion.  *Id.* at 26.  The ALJ did not explain the weight given to Dr. Rethinger's opinion in his decision.  The Commissioner concedes this omission was erroneous.  Def.'s Br. 8.

The Commissioner contends the error was harmless  because it did not affect the result of the ALJ's decision.  The Commissioner argues Dr. Rethinger's opinion did not cover the entire period for which Ms. Milner claims disability.  Again, the court cannot determine whether this is an adequate basis for rejecting Dr. Rethinger's opinion because it was not asserted by the ALJ.  *Connett,* 340 F.3d at 874; *Chenery Corp.,* 332 U.S. at 196.

Nor is it clear the error was inconsequential to the ALJ's decision. The ALJ elicited testimony from the VE based on assumptions which did not reflect the findings of Drs. Kehrli, Eder, and Rethinger. Further proceedings are required to determine whether Ms. Milner's RFC precludes her past relevant work, whether other work exists within her RFC, and if not, whether an analysis of the role of substance abuse is necessary under 20 C.F.R. §§ 404.1535, 416.935. *See Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001). Accordingly, the harmless error doctrine does not apply. *Robbins,* 466 F.3d at 885; *Stout,* 454 F.3d at 1055-56.

### B.    Opinion of Alan Webb, M.D.

Ms. Milner contends the ALJ improperly rejected the opinion of her treating physician, Alan Webb, M.D. On February 8, 2005, Ms. Milner developed left lateral elbow pain related to repetitive lifting in her work as an agricultural packer. She was treated conservatively by her primary care physician but her symptoms persisted. On May 25, 2005, Ms. Milner was examined by Dr. Webb, an orthopedic specialist. Dr. Webb gave her a steroid injection in the lateral epicondyle of the left elbow and referred her to physical therapy. Admin. R. 337-38.

On June 9, 2005, Ms. Milner reported over 90% pain relief and had full range of motion of the elbow. Dr. Webb felt she remained unable to resume regular work duty, but she was able to do modified work without lifting. *Id.* at 337. In August 2005, Dr. Webb found she had full range of motion of the elbow and could tolerate wrist extension with minimal to no pain. Dr. Webb cleared Ms. Milner to return to full duty work on August 15, 2005. *Id.* On September 29, 2005, Dr. Webb found Ms. Milner had full range of motion in all planes, but reported waxing and waning pain, worse with lifting or repetitive use of the elbow. Nonetheless, he cleared Ms. Milner to continue full duty work. *Id.* at 335.

On October 10, 2005, Ms. Milner returned with a recurrence of symptoms in the left elbow. Dr. Webb recommended surgery to debride the affected tendon and opined that she would be unable to work until several weeks after the surgery. *Id.* at 334. Dr. Webb performed the surgery on January 12, 2006. *Id.* at 356-57.

On February 27, 2006, Dr. Webb opined as follows:

> The patient is not medically stationary. She is capable of modified work as long as it is essentially one-handed utilizing the right upper extremity and not utilizing the left upper extremity at all. She is not capable of lifting beyond a few ounces on the left side. She is not capable of repetitive activity.

*Id.* at 354.

The ALJ found Ms. Milner had no permanent restrictions related to her left elbow. *Id.* at 22. Ms. Milner asserts three errors in the ALJ's evaluation of Dr. Webb's opinion. First, she contends the ALJ implicitly rejected Dr. Webb's opinion. This is not supported by the record. The ALJ could reasonably conclude Dr. Webb described only temporary restrictions. Dr. Webb prefaced his findings with the statement that Ms. Milner was not medically stationary. He anticipated Ms. Milner would be able to return to full duty after recovering from surgery. *Id.* at 334. Thus, the ALJ's finding that Ms. Milner had no permanent restrictions in the use of her left arm was not necessarily inconsistent with Dr. Webb's opinion suggesting temporary restrictions. The case record was closed shortly after the surgery and did not include evidence of Ms. Milner's permanent condition after recovering from surgery. The Commissioner may determine when Ms. Milner became medically stationary and whether she has any permanent residual limitation in the left upper extremity in further proceedings after remand.

Second, Ms. Milner notes the ALJ incorrectly believed she was capable of doing work as an agricultural packer using her right hand only. As the Commissioner concedes, the ALJ erroneously found "Dr. Webb concluded that the claimant could perform her job duties at Bear Creek with the other hand." *Id.* at 22. Def.'s Br. 10. In fact, Dr. Webb found only that Ms. Milner could perform modified work designed to accommodate her restrictions. *Id.* at 354. The error appears to be harmless because the ALJ did not elicit vocational testimony based on his erroneous finding. In any event, the Commissioner can correct this error in proceedings after remand.

Third, Ms. Milner contends Dr. Webb's treatment records show the impairment of her left arm persisted for at least 12 months. The ALJ concluded Ms. Milner did not have a left upper extremity impairment lasting for a continuous period of 12 months as required under 20 C.F.R. §§ 404.1509 and 416.909. *Id.* at 22, 23. This finding was based on Ms. Milner's return to full-duty work status from August 15, 2005, until October 10, 2005. *Id.* at 23. Ms. Milner argues this was an unsuccessful work attempt.

Work that a claimant is forced to stop after a short period because of her impairment is considered an unsuccessful work attempt and the earnings from that work cannot be used to show the ability to perform substantial gainful activity. 20 C.F.R. §§ 404.1574(a), 416.974(a). A claimant must show that immediately before the work attempt, she was out of work or performing reduced or limited work because of her impairment; she then must show her impairment caused the work attempt to be discontinued. SSR 84-25, 1984 WL 49799 (1984).

The ALJ found Ms. Milner's work from August 15, 2005, until October 10, 2005, consistent with the normal cycle of seasonal employment used in the fruit mail-order business in which Ms. Milner was employed. Admin. R. 23. He did not explain the evidentiary basis of this finding . Ms.

8 - OPINION AND ORDER

Milner testified that the work was seasonal and lasted three to five months a year, but did not indicate which months comprised the employment season. *Id.* at 385, 404, 420. The ALJ cited earnings records from third and fourth quarters of 2005 which do not appear in the case record. *Id.* at 23. The vocational expert did not describe the seasonal attributes of Ms. Milner's past work. *Id.* at 426-27.

Accordingly, the ALJ's finding that Ms. Milner's return to work from August to October 2005 reflected the seasonal nature of the work and was not an unsuccessful work attempt is not supported by substantial evidence. Whether Ms. Milner had an impairment of the left upper extremity for a continuous period of 12 months remains to be determined. The Commissioner must resolve that issue and the ultimate question whether Ms. Milner experienced a closed period of disability related to the impairment of her left arm in proceedings after remand.

### C.    Ms. Milner's Subjective Statements

Ms. Milner contends the ALJ improperly discredited her subjective symptom statements. Ms. Milner provided written submissions alleging chronic back pain, frozen shoulder syndrome, depression, panic attacks, and hepatitis C resulting in fatigue. *Id.* at. 78, 128, 130. She alleged she became unable to work due to back problems, back and neck pain, cleft palate, depression, and hepatitis C. *Id.* at 78, 85.

Ms. Milner testified she performed seasonal work for several years, 3 to 5 months a year, on an assembly line filling baskets with produce. *Id.* at 404-05, 420, 422. She worked from August 2004 until February 8, 2005, when she experienced a work-related repetitive use injury of the left elbow. *Id.* at 386, 387, 414. Her alleged social anxiety did not hinder her work on the assembly line. *Id.* at 423.

Ms. Milner testified she has chronic back and neck pain related to injuries from 1995. *Id.* at 393. She cannot work full time because of back pain. *Id.* at 385. Hepatitis C makes her tired all the time and she compensates for this by resting on the couch. *Id.* at 415. She has left shoulder pain. *Id.* at 416. She testified "my disabilities are getting to where I can't really work any more." *Id.* at 389.

The ALJ believed Ms. Milner suffered from some degree of the symptoms she alleged, but found her statements about the intensity, persistence and limiting effects of her symptoms not credible. *Id.* at 23. Ms. Milner argues the errors conceded by the Commissioner regarding the opinions described previously require the Commissioner to revisit his credibility determination in proceedings after remand. The argument has merit only as it relates to Ms. Milner's subjective statements concerning the limiting effects of hepatitis-induced fatigue. Ms. Milner's statements do not include assertions about her decreased ability to carry out detailed instructions as Dr. Rethinger opined or the limiting effects of epicondylitis described by Dr. Webb. With respect to her remaining assertions and her credibility generally, the ALJ's credibility determination is affirmed.

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). There is no dispute about the first stage here.

At the second stage of the credibility analysis, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283. The ALJ must make findings

that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Id.*; SSR 96-7p, 1996 WL 374186. The ALJ may employ ordinary techniques of credibility evaluation, such as prior inconsistent statements concerning the symptoms and other statements by the claimant that appear to be less than candid. *Id.*

Here the ALJ considered these factors and made specific findings to support his credibility determination, except he did not provide an adequate explanation for discrediting Ms. Milner's statements regarding the fatigue she experiences as a result of hepatitis C.

The ALJ concluded the objective medical evidence and treatment history did not support Ms. Milner's assertions of disabling symptoms. For example, although Ms. Milner alleged the onset of her disability was in April 2000, she failed to produce contemporaneous medical records reflecting her alleged impairments. The only treatment near the time her disability allegedly began was emergency care for acute psychosis induced by illicit substances. Admin. R. 148-50. She did not receive medical attention again for two years.

Most of Ms. Milner's treatment history reflects temporary conditions. She received treatment in March 2002, after straining her back while trying to push a car. *Id.* at 146. She received care for a left shoulder strain and joint pain following community service labor in June and August 2002. *Id.* at 177-78, 188. She was treated for a right knee strain in March 2003. *Id.* at 251. As

discussed previously, the Commissioner must determine in proceedings after remand whether Ms. Milner's February 2005 work injury was temporary or imposed long-term residual deficits.

Ms. Milner had minimal objective findings for chronic conditions. In July 2002, she had positive laboratory tests for the hepatitis C antibody. *Id.* at 180, 195, 196, 218. She had no malaise or fatigue and her liver function laboratory tests were initially within normal limits. *Id.* at 192. Elevated liver function test results in September 2002, March 2003, and May 2004 support the opinion of Drs. Kehrli and Eder that fatigue limits Ms. Milner to work requiring no more than light exertion. *Id.* at 290, 293, 325. The same test results provide some support for Ms. Milner's assertion that she "feels tired all the time." *Id.* at 415.

In August 2002, Ms. Milner had no active hepatitis C symptoms. *Id.* at 188. In February 2003, her liver biopsy was "as good as it could be" and her hepatitis C status was "Grade 1, stage 1," indicating a very early and relatively benign stage of the disease process. *Id.* at 240. In July 2003, when Ms. Milner requested a note limiting her to light duty while performing community service, medical staff indicated she had mild disease and was not being treated. *Id.* at 293. Her disease was so mild, medical staff recommended she forgo treatment for five years or until a new treatment regimen became available. *Id.* at 240, 293. Ms. Milner had not commenced treatment for hepatitis C when the case record closed.

Ms. Milner complained intermittently of chronic joint pain and had a diagnosis of osteoarthritis. *Id.* at 210-11. She was generally able to control her pain with over-the-counter analgesics. *Id.* at 146. Other than treatment for temporary exacerbations, the case record does not reflect additional treatment until Ms. Milner established care with Ahmed Taher, M.D., in February

2006. Dr. Taher began prescription pain medications, but made no objective or clinical findings of any functional limitation attributable to osteoarthritis or chronic pain. *Id.* at 341-42.

The objective evidence of mental impairment is also minimal. In July 2002, Ms. Milner was taking a prescribed antidepressant medication, but did not report depressive symptoms to medical providers. *Id.* at 192. In April 2003, Michael Sasser, M.D., performed a psychiatric evaluation and found no depressive symptoms or diagnostic basis for a mood disorder. Dr. Sasser diagnosed social anxiety disorder without panic. He found Ms. Milner felt self-conscious and had difficulty "fitting in" but did not experience spontaneous panic. *Id.* at 258-59. As described previously, Dr. Rethinger opined Ms. Milner's social anxiety supported moderate limitation interacting with the general public and her substance abuse supported a moderate limitation in carrying-out detailed instructions on a sustained basis. *Id.* at 278. There are no other objective or clinical findings regarding Ms. Milner's mental health.

The ALJ found Ms. Milner's failure to follow treatment reflected adversely on her claims of debilitating symptoms. For example, the absence of any treatment at the alleged onset of disability suggests her symptoms were not severe. Her physician prescribed physical therapy for her elbow injury, but Ms. Milner was discharged for failure to keep scheduled appointments. *Id.* at 336, 339. Ms. Milner alleged disabling fatigue from hepatitis C, but did not commence treatment. She alleged disabling chronic pain but did not pursue chronic pain management.

The ALJ could rationally conclude the sparse medical findings and limited treatment history reflected adversely on the credibility of Ms. Milner's assertions of disabling back, neck, and shoulder pain, depression, panic attacks, and severe hepatitis-induced fatigue, although a mild level of fatigue is supported. It would be reasonable to expect such debilitating conditions to be reflected in the

medical findings and it would be reasonable to expect Ms. Milner to pursue treatments to alleviate debilitating symptoms.

Ms. Milner's work history and reported activities are also inconsistent with disability since April 2000.  Ms. Milner did not stop working because of limitations imposed by her health.  At the alleged onset of disability, Ms. Milner was employed as a care-giver for her mother and she lost that work because her mother moved into a rest home and later died.  *Id.* at 405.  The ALJ could draw an adverse inference as to credibility from this evidence that Ms. Milner did not stop working due to functional limitations from her medical condition.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (Sufficient reasons for disregarding subjective pain testimony include stopping work due to layoff rather than for medical reasons, failure to seek care at the time claimant stopped work, and failure to seek treatment despite complaints of severe pain).

Ms. Milner then worked for several months a year as an agricultural packer on a production line.  She worked successfully on a seasonal basis for several years after the alleged onset of disability.  Although further proceedings are necessary to determine any lasting residual effects of her 2005 work injury, her ability to perform that work in previous seasons reflects adversely on her claims of disabling symptoms since April 2000.

The ALJ found Ms. Milner's reporting inconsistent and noted statements in which she exaggerated her symptoms and limitations.  For example, Ms. Milner reported for emergency care in October 1999, insisting her hip and pelvis had been fractured, her back broken, and her femur shattered. She claimed to be paralyzed.  Her physical examination was unremarkable.  *Id.* at 161-62. In her disability report, Ms. Milner indicated she stopped working as a care provider due to "back problems and other illnesses." *Id.* at 78.  Contrary to this assertion, Ms. Milner testified she stopped

working as a care provider because her mother died. *Id.* at 405.  Ms. Milner repeatedly claimed she

was in treatment for hepatitis C or that treatment was to begin imminently. *Id.* at 233, 238, 248.  In

fact, her disease was so mild that she was told to defer treatment for several years or until a new

treatment regimen was developed. *Id.* at 240, 293.  The ALJ also found indications that Ms. Milner

overstated the intensity of her chronic pain to obtain a medical marijuana card. *Id.* at 248.  She

admitted to Dr. Sasser she used marijuana as a mood altering agent and did not assert chronic pain

or other debility as a basis for obtaining her marijuana card. *Id.* at 256.

      The ALJ found other instances of drug-seeking behavior, past substance abuse, and history

of criminal conduct reflected adversely on Ms. Milner's credibility. *Id.* at 26.  These additional

reasons add marginally to the support for the ALJ's credibility determination, but are not essential

in light of the minimal medical findings regarding chronic conditions, sparse record of treatment,

work history showing employment during the relevant period, and indications that Ms. Milner was

not always scrupulously candid in her subjective reporting.

      The ALJ's findings with respect to Ms. Milner's credibility generally and the credibility of

her statements that she suffers from disabling chronic pain, depression, panic attacks, and fatigue are

based on inferences reasonably drawn from the record as a whole.  The findings are sufficiently

specific to permit the court to conclude the ALJ did not discredit Ms. Milner's statements arbitrarily.

*Orteza*, 50 F.3d at 748; *Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F.3d at 1193; *Andrews v.

Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

      With respect to Ms. Milner's assertion that she experiences fatigue from hepatitis C, the

ALJ's credibility determination is lacking.  The Commissioner concedes the ALJ's reason for

discrediting that assertion was erroneous, as discussed previously in relation to the opinion of Drs.

Kehrli and Eder.  Accordingly, the credibility determination cannot be sustained as it relates to Ms. Milner's statement that she is frequently tired due to hepatitis C.

## III.  **Ability to Perform Past Work**

The ALJ's conclusion that Ms. Milner can perform her past work was based on assumptions that might not accurately reflect all of her functional limitations.  The ALJ erroneously found Ms. Milner could perform medium work without properly accounting for the opinion of Drs. Kehrli and Eder that she is limited to light work by fatigue.  The ALJ failed to account for Dr. Rethinger's opinion that she cannot carry out detailed instructions on a sustained basis due to substance abuse. The ALJ failed to consider whether Ms. Milner's work injury to the left elbow caused her to experience a closed period of disability.  Because the assumptions underlying the ALJ's conclusion may not reflect all of Ms. Milner's limitations, the conclusion is not supported by substantial evidence.  *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir. 1998).

## IV.  **Remand**

The ALJ's conclusion is not supported by substantial evidence and the Commissioner's decision must be reversed.  The present record does not establish that Ms. Milner was disabled during the relevant time.  Because enhancement of the record is necessary before a disability determination can be made, a remand for further proceedings is appropriate.  *Harman v. Apfel,* 211 F.3d 1172, 1178-80 (9th Cir. 2000).

On remand the Commissioner may adduce such additional relevant evidence as he deems necessary to accurately assess Ms. Milner's RFC.  Insofar as it is reasonable to do so and consistent with the record as a whole, the Commissioner must credit the opinion of Drs. Kehrli and Eder that Ms. Milner was limited to light work during the times covered by their opinion and the opinion of

Dr. Rethinger that Ms. Milner cannot carry out detailed instructions due to substance abuse. *Hammock v. Bowen,* 879 F.2d 498, 503 (9th Cir. 1989). He must elicit vocational expert testimony based on assumptions which accurately reflect Ms. Milner's functional limitations. The Commissioner must also determine whether Ms. Milner's return to work from August 15, 2005, until October 10, 2005, was an unsuccessful work attempt and whether she has experienced a closed period of disability.

Based on the foregoing, the Commissioner's final decision is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion.

DATED this __18__ day of ___July___, 2008.

/s/ Michael W. Mosman_____
Michael W. Mosman
United States District Judge